**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**CENTRAL ISLIP DIVISION**

| | |
|---|---|
| ANDRE PAIVA, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>ALL OUT BUILDING LLC, and WILLIAM QUINN,<br><br>    Defendants. | Case No.: 2:25-cv-3808 (JMA) (AYS)<br><br>**DECLARATION IN SUPPORT OF MOTION FOR DEFAULT JUDGMENTAGAINST DEFENDANTS** |

**ANDRE PAIVA**, declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1.  I am the Plaintiff in this case; as such, I am familiar with all the facts and circumstances outlined herein based upon my personal knowledge.

2.  I respectfully submit this affidavit in support of my instant motion for an entry of default judgment against Defendants All Out Building LLC ("All Out" or the "Corporate Defendant") and William Quinn ("Quinn" or the "Individual Defendant" (collectively hereinafter "Defendants") due to their failure to appear and answer the complaint.

3.  I seek the entry of default judgment against Defendants on account of their erstwhile failure to file an Answer to my Complaint, dated July 9, 2025, in which I asserted against them causes of action for unpaid overtime wages under the Fair Labor Standards Act, as amended (hereinafter the "FLSA"), 29 U.S.C. §201 *et seq.*, New York Labor Law § 190, *et seq.*), ("NYLL"), New York Wage Theft Prevention Act (NYLL § 195) ("NYWTPA"), as well as under the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act ("ADAAA") (42 U.S.C. §§ 12101 to 12213), and the New York State Human Rights Law ("NYSHRL"). See ECF Docket Entry 1.

4.   On July 22, 2025, I caused Defendants to each be sent hard copies of the Issued Summons, Complaint, Civil Cover Sheet, Notice of Option to Consent to Magistrate Judge Jurisdiction, and Notice of Case Assignment, via personal service upon All Out and substituted service at a person's dwelling or usual place of abode upon Quinn.  See ECF Docket Entries 5 and 6.

5.   Defendants had thirty (30) days from receipt of service to respond; neither has done so, and their time to respond has elapsed.

6.   This court has jurisdiction over Defendants because, at all relevant times, they resided and/or transacted business in, and employed Plaintiff within, this judicial district.

7.   This court has subject matter jurisdiction over my claims under the FLSA and ADA pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over my state law claims pursuant to 28 U.S.C. § 1367.

8.   Venue is proper in this judicial district for the reasons stated in Paragraph 6 *supra*.

9.   On December 2, 2025, I requested a certificate of default against Defendants.  See ECF Docket Entry 8.

10. On December 3, 2025, the Clerk of the Court entered a certificate of default against Avoyants.  See ECF Docket Entry 9.

11. On March 2, 2026, this Court entered a Status Report Order requiring me to file a status report or motion for default judgment by March 13, 2026.  See Text Only Order dated March 2, 2026.

12. On March 13, 2026, my attorney filed a Status Report in accordance with this Court's above-referenced Order, requesting an extension of time to finalize my motion for default judgment. See ECF Docket Entry 10.

13. On March 16, 2026, the Court granted Plaintiff's request, Ordering that the motion for default judgment be filed by April 13, 2026. See Text Only Order dated March 16, 2026.

14. Notwithstanding any of the above, Defendants have not filed any answer to date.

15. Upon entry of a default, the court may award damages based upon evidence submitted through declarations and exhibits, or by an evidentiary hearing. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012).

16. "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." Id.

17. "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" Id. (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)).

18. Under Rule 55(b)(2)(B), it is well within the discretion of the Court to decline to hold such a hearing when the plaintiff submits an affidavit attesting, based on "real numbers," to the extent of damages. See Tamarin v. Adam Caterers, Inc., *supra*.

19. As demonstrated in the damage calculations below, and as declared by me within this declaration, the damages sustained by me can be ascertained and computed.

20. Therefore, no hearing is required as to the extent of such damages.

21. I was employed as a construction laborer by Defendants.

22. The Defendants had the power to hire and fire me, control my terms and conditions of employment, and determine the rate and method of my compensation.

23. Specifically, Quinn hired me when I first started working at All Out on March 22, 2023.

24. In addition, Quinn offered to pay me $250.00 per day for my work.

3

25. Moreover, Quinn told me when I would work.

26. All of these factors are those which I am advised indicate that Quinn was an employer under the law.

27. I worked for Defendants as a nonexempt hourly employee from approximately March 22, 2023, through December 7, 2023, a period of approximately thirty-seven (37) weeks.

28. I worked approximately sixty (60) hours per week and was paid $1,250.00 per week, for all hours worked, including those in excess of forty (40) hours a week.

29. I was therefore entitled to overtime wages for approximately twenty (20) overtime hours per week, at a rate of $31.25 per hour (one and one-half times my regular rate of $20.83), totaling approximately $625.00 per week in unpaid overtime wages, for which I was never properly paid.

30. Specifically, my overtime damages are calculated as follows: $10.42 as the overtime differential rate owed per overtime hour times twenty (20) overtime hours per week equals $208.40 in unpaid overtime wages per week, multiplied by thirty-seven (37) weeks, for a total of $7,710.80 in base unpaid overtime wages.

31. Defendants thus have a policy of paying at straight-time rates regardless of the number of hours worked.

32. As a result, I was never paid an overtime premium for hours worked in excess of forty (40) hours per week.

33. I am therefore entitled to damages, under the law, as set forth above.

34. Under the FLSA and the NYLL, an employer pays one hundred percent (100%) liquidated damages for violations; as such, I am entitled to an additional $7,710.80 in liquidated damages.

35. Therefore, I am owed a total of $15,421.60.

4

36. Moreover, Defendants failed to provide notice of my pay rate; Defendants also failed to provide accurate wage statements to me or otherwise maintain accurate records required under the NYLL.

37. These violations total $10,000.00. See NYLL §§ 195, 198. (Employers required to pay $50.00 for each workday[1] that they fail to provide notice of pay rate as required by NYLL § 195(1) to a maximum of $5,000.00 and required to pay $250.00 for each day they fail to provide accurate wage statements as required by NYLL §§ 195(3), 198(1)(d) to a maximum of $5,000.00).

38. Thus, I have incurred $25,421.60 in damages for overtime and WTPA violations.

39. To add insult to injury, the Defendants had me purchase equipment for $30,000.00 out of pocket which they promised to make me a shareholder of All Out in exchange for.

40. However, Quinn never transferred any membership interest in All Out to me despite the fact I purchased the equipment as he demanded.

41. Specifically, on or about July 8, 2023, I met with Quinn who required me to purchase a 2018 Caterpillar 259D Skid-Steer Loader in the amount of $30,000.00, which equipment was used in various jobs for the benefit of Defendants.

42. My total damages under the FLSA and NYLL are therefore $55,421.60.

43. Setting aside my wage-and-hour claims, I also respectfully submit I was discriminated against due to my disability.

44. On July 5, 2023, while working on a job for the Defendants, I sustained a serious injury tearing a tendon in my hand requiring surgery which incapacitated me from performing work as a laborer at All Out.

---

[1] I typically worked five (5) or six (6) day workweeks, so if I multiply the thirty-seven (37) weeks I worked with the low end of five (5) days a week, that totals 185 working days.

45. As a result of this workplace injury, I applied for and received workers' compensation benefits.

46. I thereafter requested an accommodation from the Defendants for a light duty assignment that will not require the use of my hands for lifting, which Defendants denied me.

47. Following my surgery, I returned to work while continuing to experience physical limitations that affected my ability to perform strenuous manual labor.

48. Given my condition, I was unable to perform my duties in the same capacity as before, which Defendant Quinn acknowledged, stating in sum and substance that I could not work the same way due to my injury.

49. As a result, I performed limited work, including operating the equipment I had purchased, transporting materials, as well as driving Defendant Quinn to and from the workplace and/or job sites, while I continued to recover.

50. This work primarily benefited Defendants' operations, and I did not receive additional compensation for these efforts.

51. Despite being aware of my condition, Defendant Quinn did not like the fact I had physical limitations due to my disability; as a result, Quinn frequently expressed dissatisfaction with my performance and made comments regarding my pace of work, notwithstanding his knowledge of my injured hand.

52. On or about December 7, 2023, without warning, and without giving me any membership interest in All Out nor paying me back the $30,000.00 I laid out for equipment, Quinn terminated me by refusing to respond to my requests about my work schedule.

53. I was out of work for an entire year following Defendants' unlawful termination of me.

6

54. I am therefore seeking a backpay award of $65,000.00, representing my general pay of $1,250.00 per week for fifty-two (52) weeks; I am not seeking front-pay.

55. I am also seeking $30,000.00 in emotional distress damages.

56. I am advised that I have a garden variety claim for emotional distress as I did not formally seek treatment (I could not afford to), but suffered emotional distress because I was angry, despondent, confused, scared, and bewildered that I paid $30,000.00 for equipment to become a shareholder of All Out and was never made one, nor reimbursed for the equipment.

57. I also dedicated myself to my work at All Out and was emotionally distraught at the fact that I put so much in and was discarded like I was nothing after I injured myself.

58. My total damages for my ADA and NYSHRL claims total $95,000.00.

59. My total damages for all my claims amount to $150,421.60.

60. I am also entitled to interest on all of the foregoing damages; interest has accrued on the unpaid and deducted wages owed to Plaintiff in the amount of (as of April 9, 2026) $24,924.72.

61. This figure is computed by multiplying 984 (the number of days that has passed between now and the midpoint[2] of the time period during which the unpaid minimum wage and/or overtime was earned) times (0.09, the annual pre-judgment interest rate provided under New York law[3] / 365, the number of days per year) times $102,710.80 (the principal damages under the FLSA,

---

[2] In instances where liabilities on which interest accrues were incurred over an extended period of time, courts have often found it useful to use the midpoint of such time for purposes of calculating the amount of interest accrued. See, e.g., U.S. Fidelity and Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 78-79 n.40 (2d Cir. 2004). Here, the midpoint date is July 30, 2023. See Artificial Intelligence Calculation. The number of days between the midpoint date and April 9, 2026 is 984 days. See Date Calculator.

[3] See New York Civil Practice Law & Rules ("CPLR") § 5004. The state law rate of interest governs for judgment on all claims arising under state law (even if such judgment is obtained in federal court). See, e.g., Pereira v. Marshall & Sterling, Inc (In re Payroll Express Corp), 2005 Bankr. LEXIS 3147, *6-7 (Bankr. S.D.N.Y. July 28, 2005).

emotional distress damages, and back-pay), with $25.33 in additional interest for every day beyond April 9, 2026.

62. Therefore, I respectfully submit I am entitled to $175,346.32 in damages for all my claims.

63. I entered into an agreement with my counsel, under the terms of which we would be entitled to recover all costs expended pertaining to this case ("costs") out of funds recovered, plus fees for the hours expended at the rates requested.

64. After granting the motion for judgment by default, I respectfully ask this Court to permit my attorneys to file a separate fee application.

65. For the foregoing reasons, Plaintiff's motion for a default judgment should be granted.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 13, 2026.

*Andre Paiva*
Andre Paiva (Apr 13, 2026 14:26:01 EDT)

**ANDRE PAIVA**

8

# 2026-04-13 REVISED Declaration in Support

Final Audit Report                                                                   2026-04-13

| | |
|---|---|
| Created: | 2026-04-13 |
| By: | Emanuel Kataev (mail@emanuelkataev.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAMi1AZIdE8kDRSVKcoofoPe8Kd-WSOBxA |

## "2026-04-13 REVISED Declaration in Support" History

Document created by Emanuel Kataev (mail@emanuelkataev.com)
2026-04-13 - 5:38:35 PM GMT- IP address: 96.57.28.110

Document emailed to Andre Paiva (apaiva.ford@gmail.com) for signature
2026-04-13 - 5:38:39 PM GMT

Email viewed by Andre Paiva (apaiva.ford@gmail.com)
2026-04-13 - 5:38:47 PM GMT- IP address: 192.178.11.100

Document e-signed by Andre Paiva (apaiva.ford@gmail.com)
Signature Date: 2026-04-13 - 6:26:01 PM GMT - Time Source: server- IP address: 24.44.23.203

Agreement completed.
2026-04-13 - 6:26:01 PM GMT

**Adobe Acrobat Sign**